UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICIA SATTLER, | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 7018 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| EDGAR HERNANDEZ, SEAN MARKHAM, ANTHONY REYES, PATRICK CRAWFORD, and CITY OF CHICAGO, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Patricia Sattler brought this action under 42 U.S.C. § 1983 against, among others, the City of Chicago and Officer Sean Markham, Officer Edgar Hernandez, Detective Anthony Reyes, and Sergeant Patrick Crawford of the Chicago Police Department. The operative complaint (Doc. 23) brings individual and official capacity claims against the individual defendants and a *Monell* claim against the City. Defendants have moved for summary judgment on all of Sattler's claims except for the claim that Officers Markham and Hernandez violated the Fourth Amendment by arresting her in her home without a warrant. The motion is granted.

**Background**

Sattler's case has been severely damaged by her failure to comply with Local Rule 56.1(b). Defendants supported their summary judgment motion (Doc. 49) with a memorandum (Doc. 50) and a Local Rule 56.1(a) statement of uncontested facts (Doc. 51). Sattler responded with a response (Doc. 53), a memorandum (Doc. 55), and exhibits (Doc. 60), but violated the clear mandate of Local Rule 56.1(b) by failing to file a Local Rule 56.1(b)(3) response to Defendants' Local Rule 56.1(a) statement. Accordingly, the court accepts as true the facts set

forth in Defendants' Local Rule 56.1(a) statement. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943-44 (7th Cir. 2005); *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003).

On November 1, 2008, Grizelda Gutierrez and Andy Guzman were robbed at knife-point by a man and a woman. In a 911 call, Gutierrez described the female assailant as a "dark-skinned, about twenty-five." Officer Piotr Nestorowicz, a non-party, was dispatched to the scene, and Gutierrez told him that the female assailant was "white/Hispanic, with curly brown hair, a black top, and black pants, in her 20's approximately 5'3" and 140 lbs." Officer Nestorowicz entered that description in the general offense case report.

Officer Markham was investigating a separate armed robbery involving a black Cadillac with license plates registered to Sattler's mother, who lived close to where Gutierrez had been robbed. Markham came across a photograph of Sattler, who was seventeen at the time but who otherwise matched the description of the female offender in Nestorowicz's general offense case report. (Sattler is white, not Hispanic, but the report described the female assailant as "white/Hispanic.") Markham and Officer Hernandez then went to Gutierrez's home and presented her with a photo array that including Sattler's photograph. Gutierrez identified Sattler as the female assailant. Gutierrez did not tell Officer Markham that the female assailant was dark-skinned or twenty-five years old, and Markham did not review the 911 transcript, in which Gutierrez described the female assailant as dark-skinned and about twenty-five. Officer

Hernandez was not aware that Gutierrez had described the female assailant in that manner during the 911 call.

On November 9, 2008, Officers Markham and Hernandez, together with a third officer, arrested Sattler at her home. The officers were wearing civilian clothing. Sattler was taken to the Chicago Police Department's 17th District. Shortly thereafter, Sattler was transferred in a police wagon to Area 5, a separate facility, by Officer David Dezonno and his partner, both non-parties and both of whom were wearing uniforms. Markham and Hernandez were not involved in bringing Sattler to the wagon. When Officer Dezonno and his partner placed Sattler in the wagon and lowered the bar to secure her, the bar hit Sattler on the right temple, causing her to lose consciousness. Sattler does not recall anything prior to or immediately after losing consciousness, including who lowered the bar or what that person was wearing. Officers Markham and Hernandez were not present when Sattler lost consciousness and were not aware of the incident. Sattler does not recall telling anyone, including her father or any police officer, that she was injured in the transport wagon.

At Area 5, Sergeant Crawford assigned Detective Reyes to the Gutierrez robbery. Reyes interviewed Gutierrez, who described the female assailant as "white, possibly Hispanic female." Reyes put together a physical lineup in which Sattler and four "fillers"—white or Hispanic female police officers between the ages of thirty and forty-one—were shown to Gutierrez and Guzman. Gutierrez identified Sattler as the female assailant, but Guzman was unable to do so. On November 25, 2008, Detective Reyes appeared before a grand jury and incorrectly testified that both Gutierrez and Guzman had identified Sattler as the female assailant. Reyes later admitted that he "did not recall correctly [the results of the lineup] at the time of his testimony."

Sattler was indicted, but the Cook County State Attorney's Office dismissed the charges on August 27, 2009.

Sattler filed this action on November 9, 2009. The second amended complaint states the following claims against the individual defendants: (1) Markham and Hernandez arrested Sattler without probable cause; (2) Markham and Hernandez arrested Sattler in her home without a warrant; (3) Markham and Hernandez employed excessive force against Sattler in the transport wagon; (4) Markham and Hernandez refused to provide Sattler with medical care; (5) Reyes placed Sattler in a suggestive lineup; (6) Reyes perjured himself before the grand jury; and (7) Crawford negligently failed to supervise or instruct the other Defendants. The second amended complaint also states a *Monell* claim against the City, alleging that it knowingly, recklessly, or with deliberate indifference failed to instruct, supervise, control, train, and discipline the individual defendants.

## Discussion

Defendants move for summary judgment on all claims, except for the claim that Officers Markham and Hernandez arrested Sattler in her home without a warrant. Sattler concedes that Sergeant Crawford is entitled to summary judgment on the claim against him. Doc. 53 at 3. The other claims are considered in turn.

I. **Individual Capacity Claims Against the Individual Defendants**

    A. **False Arrest Claim Against Markham and Hernandez**

To prevail on her false arrest claim against Officers Markham and Hernandez, Sattler must demonstrate that they arrested her without probable cause. *See McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("Probable cause is an absolute bar to a § 1983 claim for false arrest."); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an

absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution."). "A police officer has probable cause to arrest if a reasonable person would believe, based on the facts and circumstances known at the time, that a crime had been committed." *McBride*, 576 F.3d at 707.

An officer generally has probable cause to arrest based on "[t]he complaint of a single witness or putative victim … unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate. … And in crediting the complaint of a reasonably believable witness or putative victim, the police are under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." *Beauchamp v. City of Noblesville*, 320 F.3d 720, 743 (7th Cir. 2003) (citations omitted); *see also McBride,* 576 F.3d at 707 ("Normally, an officer may base a determination of probable cause on information from the putative victim if the officer reasonably believes that the victim is telling the truth."); *Neiman v. Keane,* 232 F.3d 577, 581 (7th Cir. 2000) ("[c]omplaints from putative victims about alleged crimes generally establish probable cause"). The principle applies with equal force when a witness identifies a suspect during a photographic array. *See Phillips v. Allen*, 743 F. Supp. 2d 931, 941 (N.D. Ill. 2010) ("Even a single photographic identification by a reliable eyewitness or victim may be sufficient to supply probable cause."); *Spurlin v. Page*, 1999 WL 731709, at *5 (N.D. Ill. Aug. 30, 1999) (citing cases); *Yattoni v. Oakbrook Terrace*, 801 F. Supp. 140, 146 (N.D. Ill. 1992) (citing cases and noting that when the victim "points to a picture and cries, 'That's the one!', the 'reasonable and prudent' person … will naturally tend to believe the person so identified is guilty"); *cf. United States v. Daniels*, 64 F.3d 311, 314 (7th Cir. 1995) (probable cause established where two unnamed witnesses identified suspect in a photo array). And while an unduly suggestive photographic array cannot be used to establish

probable cause, *see Phillips*, 743 F. Supp. 2d at 941, Sattler does not argue that the array in this case was overly suggestive, thus abandoning the issue, *see Beauchamp*, 320 F.3d at 742; *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

Given this record, a reasonable jury could not find that Officers Markham and Hernandez lacked probable cause for the arrest. It is undisputed that Gutierrez identified Sattler as the assailant during the photo array and lineup, and that Sattler fit the physical description Gutierrez provided to Markham and Hernandez. It also is undisputed that the officers were not aware that Gutierrez described the female assailant to the 911 operator as "dark-skinned, about twenty-five." Because Markham and Hernandez were entitled to credit Gutierrez's identification of Sattler as the female assailant, Sattler's false arrest claim fails as a matter of law.

### B. Excessive Force and Failure to Provide Medical Care Claims Against Markham and Hernandez

To prevail on her claim that Officers Markham and Hernandez committed excessive force by causing her to lose consciousness in the transport wagon, Sattler must demonstrate, at a minimum, that those officers were personally involved in the incident. *See Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.") (citation omitted); *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) ("to recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right"); *Kelly v. Mun. Courts of Marion Cnty.*, 97 F.3d 902, 909 (7th Cir. 1996) ("Individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue."); *Billups v. Kinsella*, 2010 WL 5110121, at *5 (N.D. Ill. Dec. 9, 2010) ("As he was not personally involved in the alleged use of excessive

force, he cannot be held liable for it under § 1983."). The record, however, indisputably shows that Officer Dezonno and his partner were responsible for injuring Sattler in the transport wagon, and that Officers Markham and Hernandez were neither involved in nor aware of the incident. Given this, the excessive force claim against Markham and Hernandez necessarily fails.

The same rationale dooms Sattler's claim that Markham and Hernandez failed to provide adequate and appropriate medical treatment. "Claims regarding conditions of confinement for pretrial detainees such as [Sattler], who have not yet had a judicial determination of probable cause (a *Gerstein* hearing), are … governed by the Fourth Amendment and its objectively unreasonable standard." *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). Four factors bear on whether a defendant's failure to provide medical care was objectively unreasonable: (1) whether the officer had notice of the arrestee's medical need, either by word or through observation; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) any relevant police interests. *Ibid*. Because it is undisputed that Markham and Hernandez were not aware of Sattler's medical need, they cannot be liable for the alleged denial of medical care. *See Smith v. Hunt*, 2010 WL 3842374, at *11-12 (N.D. Ill. Sept. 27, 2010); *Cobige v. City of Chicago*, 2009 WL 2413798, at *5-6 (N.D. Ill. Aug. 6, 2009); *Ortiz v. City of Chicago*, 2008 WL 4681156, at *3-4 (N.D. Ill. May 13, 2008).

### C.     Suggestive Lineup Claim Against Detective Reyes

"The Constitution does not require that police lineups, photo arrays, and witness interviews meet a particular standard of quality." *Alexander v. City of South Bend*, 433 F.3d 550, 555 (7th Cir. 2006). As the Supreme Court made clear in *Manson v. Brathwaite*, 432 U.S. 98 (1977), "[u]nlike a warrantless search, a suggestive preindictment identification does not in itself intrude upon a constitutionally protected interest." *Id*. at 113 n.13. It follows that

challenges to police identification procedures are evidentiary in nature and cannot support an independent claim under § 1983: "the *Braithwaite* rule regarding unduly suggestive identification procedures is prophylactic rule designed to protect a core right, that is the right to a fair trial, and it is only the violation of that core right and not the prophylactic rule that should be actionable under § 1983." *Alexander*, 433 F.3d at 555 (internal quotation marks omitted). Detective Reyes therefore cannot be held liable under § 1983 for placing Sattler in an unduly suggestive lineup unless the lineup resulted in Sattler being subjected to an unfair trial. *See Hensley v. Carey*, 818 F.2d 646, 649 (7th Cir. 1987) ("Hensley has no claim under § 1983 arising out of his participation in an unduly suggestive lineup since he was not deprived of his right to a fair trial."); *Williams v. City of Chicago*, 2011 WL 892824, at *8 (N.D. Ill. Mar. 14, 2011) ("the charges against Plaintiff were dismissed before his case went to trial … [and] flawed identification procedures are not themselves constitutional violations") (citation and quotation marks omitted). Because Sattler never was tried, she has no viable constitutional claim against Reyes arising from the allegedly unfair lineup.

### D. Perjured Grand Jury Testimony Claim Against Detective Reyes

It is undisputed that Detective Reyes incorrectly testified before the grand jury that both Gutierrez and Guzman identified Sattler at the lineup. Defendants maintain that Reyes is entitled to absolute immunity on that claim. Doc. 50 at 11. Sattler does not address absolute immunity, thus forfeiting the point. *See Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006); *Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003).

Defendants are correct on the merits in any event. Police officers testifying before a grand jury are entitled to absolute immunity from liability under § 1983. *See Curtis v. Bembenek*, 48 F.3d 281, 284-85 (7th Cir. 1995) (collecting cases); *Cervantes v. Jones*, 188 F.3d

805, 809 (7th Cir. 1999), *overruled on other grounds*, *Newsome v. McCabe*, 256 F.3d 747, 751-52 (7th Cir. 2001). The only exception to "this wall of immunity for trial and pretrial testimony exists for a 'complaining witness.'" *Cervantes*, 188 F.3d at 809. "To qualify as a complaining witness (and thereby be disqualified from absolute immunity), a witness must play a sufficient role in initiating the prosecution." *Id*. at 810 (citation omitted). Put differently, "merely providing false testimony to a grand jury is not enough … [Rather,] a complaining witness is one 'who actively instigated or encouraged the prosecution of the plaintiff.'" *Ibid*. (quoting *Curtis*, 48 F.3d at 286).

Sattler does not argue that Reyes was a complaining witness, thus forfeiting the point. *See Gauger v. Hendle*, 349 F.3d 354, 358 (7th Cir. 2003) ("There is an exception [to absolute immunity] for 'complaining witnesses' … but Gauger does not argue that the exception is applicable.") (citation omitted), *overruled on other grounds*, *Wallace v. City of Chicago*, 440 F.3d 421, 425-26 (7th Cir. 2006). Nor does Sattler even attempt to demonstrate that Reyes was "instrumental in [her] continued confinement or prosecution," *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988), that he "actively instigated or encouraged the prosecution," *Curtis*, 48 F.3d at 286, or that he was the only witness to testify before the grand jury, was the lead investigator, or kept the investigation going, *see Cervantes*, 188 F.3d at 810. *See also Latta v. Chapala*, 221 Fed. Appx. 443, 444 (7th Cir. 2007) ("None of the witnesses who remain … properly may be classified as a complaining witness, covered only by qualified immunity. These witnesses did not claim to be victims of the offense; they were third parties who investigated and testified about what they found, and such persons are covered squarely by [absolute immunity]."); *McCann v. Hood*, 2009 WL 276792, at *11 (S.D. Ind. Feb. 3, 2009) (rejecting application of complaining witness exception where "there is no evidence that Officer Collins

prepared any reports for or even talked to the prosecutor, much less that he pressured the prosecutor to pursue criminal charges against" the plaintiff). Because Sattler cannot overcome absolute immunity, Detective Reyes is entitled to summary judgment on the false grand jury testimony claim. *See Pira v. Chanen*, 2010 WL 148626, at *4 (N.D. Ill. Jan. 8, 2010); *Johnson v. Saville*, 2008 WL 4619782, at *4-5 (N.D. Ill. Oct. 17, 2008).

## II.     *Monell* Claim Against the City

Sattler can pursue a *Monell* claim against the City only to the extent she suffered a constitutional injury. *See City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986); *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1993). Because summary judgment has been granted on all claims except for the warrantless arrest claim, the *Monell* claim can proceed, if at all, only with respect to the alleged warrantless arrest.

"A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability. A municipality only may be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). Put another way, "local governments are responsible only for their own illegal acts" and may not be held "vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal quotation marks omitted). To prevail on a *Monell* claim, Sattler must demonstrate that a municipal employee's unconstitutional act was caused by: "(1) an express [municipal] policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional

injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (citation omitted); *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). In addition to showing that the municipality acted culpably in one of those three ways, the plaintiff must prove causation, demonstrating that the municipality, "through its deliberate conduct, … was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *see also Connick*, 131 S. Ct. at 1358 n.5; *Gable*, 296 F.3d at 537.

The second amended complaint indicates that Sattler is attempting to prove *Monell* liability in the first (express policy) and second (widespread practice/custom) ways identified by the Seventh Circuit in *Gable*. Doc. 23 at ¶ 27. Sattler, however, has adduced no evidence that the City had an express policy authorizing officers to make warrantless arrests in homes absent exigent circumstances. Nor has Sattler adduced evidence that there is a widespread practice of officers effecting such arrests; in fact, Sattler did not identify any other unlawful warrantless arrest. *See Gable*, 296 F.3d at 538 ("three incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware").

Sattler does assert that because Hernandez was sued in prior litigation, the City was aware of and deliberately indifferent to the substantial risk that he posed to constitutional rights. Doc. 55 at 4. But Sattler does not say what wrongs Hernandez was alleged to have committed or how those lawsuits were resolved. The mere fact of prior lawsuits against Hernandez, therefore, cannot support *Monell* liability on the warrantless arrest claim. *See Mayer v. Edwards*, 538 F. Supp. 2d 1041, 1043-44 (N.D. Ill. 2008) (where defendants were parties to prior complaints and investigations, but plaintiff failed to demonstrate that those complaints concerned the same type of constitutional violation, that any of the complaints were sustained, or that the officers were

disciplined, there was no indication of deliberate indifference to a widespread practice); *Hernandez v. Nielson*, 2002 WL 31804788, at *1 (N.D. Ill. Dec. 13, 2002) ("[T]he court is at a complete loss to understand what possible relevance this evidence [of prior lawsuits] has in proving the Department maintains a widespread practice of allowing its officers to use excessive force. Just because somebody alleges something does not make it so. And Hernandez himself admits these [prior] cases were settled, so there was never any finding of liability on the officers' part. How such evidence could show a widespread practice of using excessive force within the Department is beyond the court.").

Sattler also maintains, without any supporting evidence, that the City failed adequately to train and supervise its officers. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 131 S. Ct. at 1359. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of the persons with whom the [untrained employees] come into contact." *Ibid*. (internal citation and quotation marks omitted, alteration in original); *see also Jenkins*, 487 F.3d at 492. Importantly, "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policy-makers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 131 S. Ct. at 1360 (internal quotation marks omitted). "A pattern of similar constitutional violations by untrained employees is

ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Ibid*. (internal quotation marks omitted); *see also Jenkins,* 487 F.3d at 492 (deliberate indifference in failure-to-train case can be shown by "a repeated pattern of constitutional violations [which] makes the need for further training ... plainly obvious to the city policymakers") (internal quotation marks omitted). As noted above, Sattler has adduced no evidence of any prior unlawful warrantless arrests, let alone a repeated pattern. Her failure to train theory therefore cannot proceed. *See Dye v. Wargo,* 253 F.3d 296, 299 (7th Cir. 2001) (summary judgment appropriate where plaintiff "has not offered any evidence that use of excessive force is common in [the municipality], indeed has not produced evidence of even one prior incident. Thus the City cannot be held liable on the theory that lack of more extensive training for [defendants] evinces a policy of using constitutionally improper force") (citation omitted); *Blackman v. City of Kokomo,* 2006 WL 694367, at *10 (S.D. Ind. Mar. 16, 2006) (same).

### III. Official Capacity Claims Against the Individual Defendants

"Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Because there is no basis for municipal liability against the City, it follows that there is no basis for official capacity claims against the individual defendants. *See Grieveson*, 538 F.3d at 773-74 (where *Monell* claims fail, so do official capacity claims); *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007) ("Unless there is an unconstitutional policy, there cannot be official-capacity liability; only individual-capacity liability is possible."). Summary judgment accordingly is granted on all official capacity claims.

**Conclusion**

For the foregoing reasons, Defendants are granted summary judgment on the *Monell* claim against the City; on all official capacity claims against the individual defendants; and on the individual capacity false arrest, excessive force, failure to provide medical care, suggestive lineup, perjured testimony, and inadequate supervision claims against the individual defendants. Trial will proceed on the claim that Officers Markham and Hernandez unlawfully arrested Sattler in her home without a warrant. Because no claims remain against the City, Detective Reyes, or Sergeant Crawford, they are dismissed as party defendants. Defendants' motion to strike three exhibits attached to Sattler's memorandum (Doc. 62 at 2) is denied as moot.

August 30, 2011                                              United States District Judge